**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANDREA FLORENTINO,<br><br>               Plaintiff,<br><br>     v.<br><br>CITY OF NEWARK, *et al.*,<br><br>               Defendants. | Case No. 2:19-cv-21055 (BRM) (SCM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a Motion to Dismiss filed by Defendants BluLine Security Consulting, LLC ("BluLine") and Dominic Saldida ("Saldida") (collectively, the "BluLine Defendants") and a Motion to Dismiss filed by Defendants Lieutenant John Rodrigues ("Lieutenant Rodriguez"), Detective Rafael Ramos ("Detective Ramos") (collectively, the "Officer Defendants"), the City of Newark (the "City"), and the City of Newark Police Department (the "Police Department") (collectively, the "City Defendants") (with the Officer Defendants, the "Newark Defendants," and collectively with the BluLine Defendants, "Defendants"), seeking to dismiss the Complaint of Plaintiff Andrea Florentino ("Plaintiff"). (ECF Nos. 8, 9.) Plaintiff opposed Defendants' Motions (ECF Nos. 10, 23), and BluLine and the Newark Defendants replied (ECF Nos. 19, 25). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, the BluLine Defendants' Motion to Dismiss is **GRANTED** and the Newark Defendants' Motion to Dismiss is **GRANTED**.

I.   **BACKGROUND**

A.   **Factual Background**[1]

Plaintiff is a citizen of Brazil who resided in Newark, New Jersey at all times relevant to and described in the Complaint. (ECF No. 1-2 at *5.)[2]  On or about June 19, 2017, Ras Baraka, the mayor of Newark ("Mayor Baraka"), New Jersey, signed Executive Order 17-001 (the "Executive Order") which declared that Newark was a sanctuary city. (*Id.* ¶ 2; *see also* ECF No. 8, Ex. B.)[3] The Executive Order prohibited City employees and officers from "expending time, funds or resources on facilitation of the civil enforcement of federal immigration law." (*Id.* ¶ 2; *see also* ECF No. 8, Ex. B.) The Executive Order also "specifically prohibits [City] employees and agents from honoring immigration detainer request or federal administrative warrants unless such a request or warrant is a valid and properly issued judicial criminal warrant." (*Id.* ¶ 2; *see also* ECF No. 8, Ex. B.)

On or about August 29, 2017, Plaintiff was in her apartment with her three minor children, ages 3, 10, and 14. (ECF No. 1-2 ¶ 3.) At around 6:45 a.m., Plaintiff heard a knock on her window

---

[1] For the purpose of this motion to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to the Plaintiff. *See Phillips v. City of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[2] Plaintiff's Complaint contains numbered paragraphs that reset to "¶ 1" at the beginning of each new section. (*See generally* ECF No. 1-2.) For clarity, the Court's citations that contain reference to a paragraph number refer to allegations appearing on pages 4–7 of the Complaint, which appear under the header "Factual Allegations." Citations to other sections only reference the page number of the Complaint as listed in the ECF header and are denoted by an asterisk.

[3] While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).

and saw a "man in plain clothes" standing outside her window. (*Id.*) The man "asked her to open the door to discuss a green car parked across the street, which was in Plaintiff's possession." (*Id.*) When Plaintiff cracked open the door, "two men forced themselves inside her apartment, assaulted her[,] and placed her in handcuffs." (*Id.*) The two men did not identify themselves, nor did they produce a warrant for her arrest. (*Id.* ¶ 4.) The two men who entered Plaintiff's apartment were later identified as the Officer Defendants. (*Id.* ¶ 5.) The Officer Defendants "removed [] Plaintiff from her apartment and placed her in the back of an unmarked police vehicle," leaving her minor children in the apartment alone without supervision. (*Id.*)

The Officer Defendants then transported Plaintiff to an unidentified precinct. (*Id.* ¶ 7.) While she was being transported to the precinct, the Officer Defendants continuously taunted Plaintiff and hurled verbal insults at her, including, *inter alia*, calling her "a bitch." (*Id.* ¶ 6.) The Officer Defendants also repeatedly used phrases like "I love Trump" and "you can thank Trump." (*Id.*) Plaintiff did not realize the Officer Defendants were police officers until they arrived at the precinct. (*Id.*) Upon her arrival at the precinct, Plaintiff was informed that "she had an outstanding order of deportation from 2005." (*Id.*)

While Plaintiff was being held at the precinct, an officer from Immigration and Customs Enforcement ("I.C.E.") "arrived and cuffed [] [P]laintiff's hands and feet. (*Id.* ¶ 8.) The Officer Defendants then transported Plaintiff to "an immigration holding facility where she was held in a cell for several hours." (*Id.*) At the holding facility, Plaintiff was presented with two options: (1) to remain in custody until her immigration status was determined or (2) to be released on the condition that she wear an ankle bracelet at all times. (*Id.* ¶ 9.) Plaintiff chose to be released with an ankle bracelet so she could return home to her daughters. (*Id.*) After Plaintiff's decision, she was transported to a second immigration facility where she was fitted with an ankle bracelet. (*Id.*)

In total, Plaintiff was in custody for between eight and nine hours. (*Id.* ¶ 10.) Subsequent to her release, Plaintiff was required to wear the ankle bracelet for six months, which affected "her ability to remain gainfully employed during [this] time." (*Id.*)

A Newark Police Incident Report indicated Dominic Saldida called Lieutenant Rodrigues and informed him that Plaintiff had an open immigration warrant. (*Id.* ¶ 11; *see also* ECF Nos. 9-4, 24.)[4] Plaintiff alleges upon information and belief that Saldida is a retired Police Deputy Chief for the City of Newark and that he is now a private citizen who operates BluLine, a "security services company." (ECF No. 1-2 ¶ 11.) After receiving the call from Saldida, Lieutenant Rodrigues contacted I.C.E. to confirm there was an immigration order of deportation open against Plaintiff. (*Id.* ¶ 12.)

Plaintiff alleges that Saldida made the call to prevent her from testifying against her estranged husband, Frank Aiello ("Aiello"), in a criminal proceeding relating to allegations of domestic violence. (*Id.* ¶ 14.) Plaintiff was scheduled to testify on August 31, 2017, two days after she was detained by the Officer Defendants. (*Id.*) Plaintiff further alleges that prior to her arrest and detention, Aiello's attorney contacted one of her friends and threatened that Plaintiff would be deported if "she did not dismiss the domestic violence action." (*Id.* ¶ 15.)

Plaintiff filed an official report with the Newark Police Department's Office of Professional Standards relating to her arrest and detention. (*Id.* ¶ 16.) The subsequent investigation

---

[4] ECF No. 9-4 is a copy of the immigration Warrant of Removal/Deportation issued by the Department of Homeland Security. ECF No. 24 is a copy of the police report stemming from Plaintiff's arrest, which was drafted by Lieutenant Rodrigues. "[C]ourts may consider any document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (internal quotation omitted).

concluded that the Officer Defendants had violated the Police Department's rules and regulations. (*Id.*)[5]

### B.     Procedural History

On August 28, 2019, Plaintiff filed seven-count Complaint alleging: Count One, against the Officer Defendants and Saldida,[6] alleging a claim pursuant to 42 U.S.C. § 1983 ("Section 1983") for unreasonable search and seizure, in violation of the Fourth Amendment; Count Two, against the Officer Defendants and Saldida, alleging a Section 1983 claim for violation of the Due Process Clause of the Fourteenth Amendment; Count Three, against the City Defendants, for *Monell* liability; Count Four, against all Defendants, for violations of the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. §§ 10:6-1, *et seq.*, and for violations of the New Jersey Constitution ¶¶ 5, 7; Count Five, against all Defendants, for violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1, *et seq.*; Count Six, against all Defendants, for the "improper, illegal[,] and perverted use of the legal process [that is] neither warranted or authorized by any law"; and Count Seven, against all Defendants, for an

---

[5] In Plaintiff's Opposition to the Newark Defendants' Motion, Plaintiff "objects" to certain facts as recited by the Newark Defendants. (ECF No. 23 at 4.) Plaintiff then states that she "wishes to add the following as a supplement to the record for this [M]otion." (*Id.*) However, "[i]t is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018) (quoting *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). The Court, therefore, does not consider any new factual allegations or substantive claims raised in Plaintiff's Opposition Brief. *See, e.g., Strategic Envtl. Partners, LLC v. Bucco*, 184 F. Supp. 3d 108, 129 n.17 (D.N.J. 2016) (declining to consider plaintiffs' allegation that was raised for the first time in an opposition brief).

[6] Although Plaintiff alleges Counts One and Two against "All Individual Defendants," she never defines this term or indicates the names of the individuals that comprise this group. (*See generally* ECF No. 1-2.) Indeed, the specific allegations under these counts relate only to actions taken by the Officer Defendants. (*Id.*) However, to the extent Plaintiff intended to assert Counts One and Two as to Saldida as well, the Court addresses such an assertion *infra* in Section III.A.1.

award of punitive damages pursuant to the Punitive Damages Act, N.J. Stat. Ann. §§ 2A:15-5.9, *et seq.* (*see generally id.*).

On December 4, 2019, this matter was removed to this Court from the Superior Court of New Jersey, Essex County, Law Division. (ECF No. 1.) On January 6, 2020, the BluLine Defendants moved to dismiss and on January 24, 2020, the Newark Defendants moved to dismiss. (ECF Nos. 8, 9.)

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more

than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pleaded; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

## III. DECISION

### A.   All Claims Against the Police Department

At the outset, the Court finds that all of Plaintiff's claims against the Police Department fail because Plaintiff has sued the Police Department in conjunction with the City of Newark. "In New Jersey, a municipal police department is not an entity separate from the municipality." *Trapp v. New Jersey*, No. 17-10709, 2018 WL 4489680, at *6 (D.N.J. Sept. 19, 2018) (citing N.J. Stat. Ann. § 40A:14-118 (stating that that New Jersey police departments are "an executive and enforcement function of municipal government")). "In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an

administrative arm of the local municipality, and is not a separate judicial entity." *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) (quotation and citation omitted); *see also*, *Trapp*, 2018 WL 4489680, at *6 (finding that the defendant police department cannot be sued under Section 1983 and dismissing all claims against them); *Trafton v. City of Woodbury,* 799 F. Supp. 2d. 417, 429 (D.N.J. 2011) (same) *Catlett v. N.J. State Police*, No. 12-153, 2013 WL 2181273, at *4 (D.N.J. May 20, 2013) (same).

The Newark Defendants' Motion to Dismiss, to the extent it seeks dismissal of all claims against the Police Department, is therefore **GRANTED**. All claims against the Police Department are **DISMISSED WITH PREJUDICE**.[7]

### B. Counts One through Five Against the BluLine Defendants

The BluLine Defendants argue that Plaintiff's civil rights claims against them should be dismissed because "no facts are alleged as to the BluLine Defendants or any action allegedly taken by them." (ECF No. 8-4 at 10.) As to Plaintiff's unreasonable search and seizure claim, the BluLine Defendants argue that because "[n]either Saldida nor any representative of BluLine is alleged to have been present at the time of Plaintiff's arrest," Plaintiff has failed to allege a plausible Fourth Amendment claim against them. (*Id.* at 11.) The BluLine Defendants contend that "there is no factual basis" to conclude that Saldida qualifies as a "state actor." (*Id.*) As to Plaintiff's Fourteenth Amendment claim, the BluLine Defendants contend that because Saldida "was not a government agent, exercised no control over the government agents, and cannot have been found to have failed to comply with the [Executive Order]," he cannot be held liable. (*Id.* at 14.) Additionally, the

---

[7] Plaintiff fails to address this point in her Opposition to the Newark Defendants' Motion to Dismiss. (*See generally* ECF No. 23.)

BluLine Defendants argue that there is no allegation they were working on behalf of the government in any capacity such that they might be considered government agents. (*Id.*)

In her opposition to the BluLine Defendants' Motion, Plaintiff states that she "does not object to [the] dismissal of counts one (1) through five (5) of the Complaint as against Dominic Saldida and BluLine Security Consulting." (ECF No. 10 at 1.) The BluLine Defendants' Motion to Dismiss, to the extent it seeks dismissal of Counts One through Five, is therefore **GRANTED**. Counts One through Five, as to the BluLine Defendants, are **DISMISSED WITH PREJUDICE**.

### C.    Plaintiff's Section 1983 Claims[8]

Plaintiff brings Counts One and Two of the Complaint against "[a]ll [i]ndividual [d]efendants" pursuant to Section 1983, for violations of the Fourth and Fourteenth Amendments. (ECF No. 1-2 at *10–*12.) Because, as discussed above, Plaintiff consents to dismissal of Counts One through Five as to the BluLine Defendants, the Court only addresses the arguments of the Officer Defendants.

Section 1983 provides, in relevant part, that "every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of rights, privileges, or immunities secured by the Constitution and laws" shall be civilly liable to the injured party. 42 U.S.C. § 1983. "By its terms, of course, [§ 1983] creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995) (quoting *City of Okla. City v. Tuttle,* 471 U.S. 808, 816, (1985) (plurality opinion)).

---

[8] In her opposition to the Newark Defendant's Motion, Plaintiff asserts that "[t]he City of Newark erroneously argues that [] [P]laintiff's [C]omplaint is premised on the [Officer Defendants'] violation of the [Executive Order] . . . That is not the premise of the [C]omplaint. The [C]omplaint firmly stands on the ground that the arrest was made in violation of [] [P]laintiff's constitutional rights irrespective of the existence of the Executive Order." (ECF No. 23 at 1.)

To state a claim against an individual under § 1983, a plaintiff must adequately allege: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011) (citing *Kost v. Kozakiewicz,* 1 F.3d 176, 184 (3d Cir. 1993)).

### 1.   The Parties' Positions

The Officer Defendants argue that the existence of a valid immigration warrant defeats all of Plaintiff's civil rights claims against them and, alternatively, that her claims should be dismissed because they have qualified immunity. (ECF No. 9-1 at 21.) As to Plaintiff's Fourteenth Amendment claim, the Officer Defendants argue that Plaintiff has failed to state a procedural due process claim because she did not state "what process she was owed and how that process was denied." (*Id.* at 22 (internal quotation and citation omitted).) Her claim for a violation of substantive due process is similarly defective because "Plaintiff has not identified a substantive due process right." (*Id.*) at 23.) As to Plaintiff's Fourth Amendment Claim, the Officer Defendants contend that administrative immigration warrants "confer probable cause for arrest under the Fourth Amendment" and therefore Plaintiff's claim fails. (*Id.* at 24.) Alternatively, the Officer Defendants argue they are entitled to qualified immunity from suit. (*Id.* at 25.)

Plaintiff advances numerous arguments in opposition. As to her Fourth Amendment claim, Plaintiff argues that her arrest was unlawful because the Newark Defendants lacked federal authority to execute the administrative immigration warrant and that its execution violated her rights. (ECF No. 23 at 8.) Specifically, Plaintiff notes that the Officer Defendants, who were dressed in plain clothes and not official uniforms, forced their way into her home without her consent and without a judicial warrant, assaulted her, and then placed her under arrest. (*Id.* at 10.)

Plaintiff argues the Officer Defendants lacked probable cause to suspect she had committed or was in the process of committing a crime and also notes the Officer Defendants never identified themselves during this process. (*Id.*) Plaintiff contends that, at most, the immigration warrant indicates "a request by the Department of Homeland Security to hold [] Plaintiff *after* a lawful arrest," based on a state or federal offense, had been made. (*Id.* at 21 (emphasis in original).)

As to the qualified immunity argument, Plaintiff contends that a reasonable police officer would not have thought the conduct of the Officer Defendants comported with established legal standards. (*Id.* at 33.) Plaintiff further argues that the Officer Defendants reliance on the immigration warrant was similarly unreasonable. (*Id.* at 34.) Finally, Plaintiff asserts that the Officer Defendants should not be granted qualified immunity simply because there is a lack of case law imposing liability on officers in analogous circumstances. (*Id.* at 34–35.)

As to her Fourteenth Amendment claim, Plaintiff argues that both her procedural and substantive due process rights were violated. (*Id.* at 22.) Plaintiff contends that her procedural due process rights "were invoked when the [Officer Defendants] held [] Plaintiff without legal justification and subsequently transported her to an [I.C.E.] holding facility to turn her over" into I.C.E.'s custody. (*Id.* at 23.) As to her substantive due process claim, however, Plaintiff's Opposition Brief confusingly appears to try and characterize or re-frame this claim as one asserted pursuant to the Equal Protection Clause, based on her status as an undocumented immigrant. (*Id.* at 25.)

### 2.     Plaintiff's Purported Equal Protection Clause Claim

As discussed above, Plaintiff's Opposition to the Newark Defendants' Motion to Dismiss attempts to re-frame her substantive due process claim as one brought under the Equal Protection Clause. Plaintiff's Complaint, however, is devoid of any mention of the Equal Protection Clause.

(*See generally* ECF No. 1-2.)[9] Plaintiff's Complaint similarly fails to allege she is a member of a protected class. (*Id.*) "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Olson*, 724 F. App'x at 166 (internal quotation omitted) (citation omitted). The Court finds, therefore, that Plaintiff has failed to state an equal protection claim. The Newark Defendants' Motion to Dismiss, as to Plaintiff's purported equal protection claim, is therefore **GRANTED**. Count Two of the Complaint, to the extent it intends to assert an equal protection claim, is **DISMISSED WITHOUT PREJUDICE**.

### 3.   The Newark Defendants' Motion

#### i.   Plaintiff's Fourth Amendment Claims Generally

The Court first considers Plaintiff's Fourth Amendment claims. Plaintiff's status as an undocumented immigrant does not preclude her from invoking the protections of the United States Constitution. *Yoc-Us v. Attorney Gen. United States*, 932 F.3d 98, 104 (3d Cir. 2019) ("Even though Petitioners are not United States citizens, the relevant Fourth and Fourteenth Amendment rights apply to them.") (citation omitted); *see also Plyler v. Doe*, 457 U.S. 202, 210 (1982) ("Whatever [plaintiff's] status under the immigration laws, an alien is surely a 'person' in any ordinary sense of that term. Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments.") (collecting cases).

The Fourth Amendment provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause,

---

[9] To the extent Plaintiff wishes to assert an equal protection claim, she may file an amended complaint.

> supported by Oath or affirmation, and particularly describing the
> place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "[T]he right of a man to retreat into his own home and there be free from unreasonable governmental intrusion stands [a]t the very core of the Fourth Amendment." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (citing *Kyllo v. United States,* 533 U.S. 27, 31 (2001)) (internal quotations omitted) (alteration in original). "Warrantless searches of the home are presumptively unreasonable unless the occupants consent or probable cause *and* exigent circumstances exist to justify the intrusion." *United States v. Mallory*, 765 F.3d 373, 383 (3d Cir. 2014) (citing *United States v. Coles*, 437 F.3d 361, 365 (3d Cir. 2006)). A Court "evaluate[s] whether exigent circumstances existed by an objective standard; the subjective intent of the officer is irrelevant." *Id.* (citing *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006)). Exigent circumstances exist when: (1) "officers are in hot pursuit of a fleeing suspect," (2) "when they reasonably [] believe someone is in imminent danger," or (3) "when they reasonably believe they must act to prevent the imminent destruction of evidence." *Id.* (internal quotations and citations omitted).

### ii.      Qualified Immunity Analysis

Here, because the Office Defendants made a warrantless entry into Plaintiff's home in the absence of exigent circumstances, the Court finds that Plaintiff has sufficiently pleaded that they violated the Fourth Amendment. The Court, therefore, must now consider whether the Officer Defendants are entitled to qualified immunity.

Qualified immunity "is an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "The doctrine of qualified immunity shields law enforcement officers from personal liability for civil rights violations when the officers are acting under color of law in the performance of official duties." *Morillo v. Torres*, 117 A.3d 1206, 1208

(N.J. 2015). Qualified immunity "interposes a significant hurdle for plaintiffs seeking to recover for asserted violations of civil rights at the hands of law-enforcement officials." *Id.* (citation omitted). "This exacting standard gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (internal quotations omitted) (citation omitted).

To determine whether qualified immunity applies, courts must consider: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and (2) "whether the right at issue was clearly established at the time of a defendant's alleged misconduct." *Montanez v. Thompson*, 603 F.3d 243, 250 (3d Cir. 2010). "[C]ourts are free to address the two elements in whichever order they deem appropriate." *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 235 (2009)).

"The dispositive point in determining whether a right is clearly established is whether a reasonable officer in the same situation clearly would understand that his actions were unlawful." *Morillo*, 117 A.3d at 1214. "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)); *see also White v. Pauly*, 137 S. Ct. 548, 551 (2017) ("While this Court's case law do[es] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.") (internal quotations omitted) (citation omitted). Indeed, qualified immunity "shields an officer from suit when [he or she] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he or she] confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz,* 533 U.S. 194, 206 (2001) (stating that qualified

14

immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable force'")). There is a "longstanding principle that 'clearly established law' should not be defined "'at a high level of generality.'" *White*, 137 S. Ct. at 552 (quoting *al–Kidd*, 563 U.S. at 742). Rather, "the clearly established law must be 'particularized' to the facts of the case." *Id.* (citing *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). "Otherwise, [p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (alterations in original) (citation omitted).

"[W]hen a plaintiff asserts that he or she was unlawfully arrested, a law enforcement officer can defend such a claim 'by establishing either that he or she acted with probable cause, or, even if probable cause did not exist, that a reasonable police officer could have believed in its existence.'" *Morillo*, 117 A.3d at 1215 (quoting *Kirk v. City of Newark*, 536 A.2d 229, 234 (N.J. 1988)). "If officers of reasonable competence could disagree on the issue of probable cause, the doctrine of qualified immunity should be applied." *Connor v. Powell*, 744 A.2d 1158, 1164 (N.J. 2000) (citing *Malley v. Briggs,* 475 *U.S.* 335, 341 (1986)).

"Fourth Amendment reasonableness 'is predominantly an objective inquiry.'" *al-Kidd*, 563 U.S. at 736 (citing *Indianapolis v. Edmond*, 531 U.S. 32, 47 (2000)). Courts ask "whether the circumstances, viewed objectively, justify [the challenged] action." *Id.* (citing  *Scott v. United States,* 436 U.S. 128, 138 (1978)) (internal quotation omitted). "If so, that action was reasonable '*whatever* the subjective intent' motivating the relevant officials. *Id.* (quoting *Wren v. United States,* 517 U.S. 806, 814 (1996)). "This approach recognizes that the Fourth Amendment regulates conduct rather than thoughts." *Id.* (citing *Bond v. United States,* 529 U.S. 334, 338, n.2 (2000)). The "standard of objective reasonableness . . . is a lesser standard than required for probable cause." *Schneider v. Simonini*, 749 A.2d 336, 352 (N.J. 2000).

Here, the Court finds that, as pleaded, the conduct of the Officer Defendants was objectively reasonable under the circumstances. The Officer Defendants arrested Plaintiff on the basis of a valid immigration warrant that was issued pursuant to a deportation order that had been pending against Plaintiff since 2005. (*See* ECF No. 1-2 ¶ 6; *see also* ECF No. 9-4.) Whether the immigration warrant actually created probable cause for the entry and arrest, the Court finds that the Officer Defendants could have reasonably believed that it did. At most, the Court finds that "officers of reasonable competence could disagree on the issue of probable cause" and, therefore, "the doctrine of qualified immunity should be applied." *Connor*, 744 A.2d at 1164. The Court, therefore, finds that the facts, as presently alleged, do not clear the "significant hurdle" necessary to defeat qualified immunity in this case. Accordingly, the Newark Defendants' Motion to Dismiss, as to Plaintiff's Fourth Amendment claim, is **GRANTED**. Count One of the Complaint is **DISMISSED WITHOUT PREJUDICE**.[10]

### iii.        Plaintiff's Due Process Claims[11]

The Court next considers Plaintiff's Fourteenth Amendment claim. The Fourteenth Amendment provides, in relevant part, that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1.

> To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth

---

[10] Plaintiff does not cite to a single case wherein police officers acting in a similar fashion have been found to have violated constitutional rights sufficient to place them outside the ambit of qualified immunity. *See White*, 137 S. Ct. at 551 ("While this Court's case law do[es] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."); *see also Brown v. Elliott*, 876 F.3d 637, 643 (4th Cir. 2017) ("[Plaintiff] does not cite, nor have we found, a single case that so holds.").

[11] Plaintiff argues that "[t]he Fourteenth Amendment is implicated in this case because [P]laintiff's arrest constituted a seizure within the meaning of [the Fourteenth Amendment] just as it did under the Fourth Amendment." (ECF No. 23 at 23.)

> Amendment's protection of "life, liberty, or property," and (2) the
> procedures available to h[er] did not provide "due process of law."

*Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (citing *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000)). Plaintiff argues that the Officer Defendants violated her procedural due process rights by "holding, transporting[,] and assuring [] [P]laintiff was in the custody of the Department of Homeland Security once at the holding facility without any legal justification whatsoever." (ECF No. 23 at 25.)

As to substantive due process, the Supreme Court has long held "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (citing *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 847–849 (1992) (describing cases in which substantive due process rights have been recognized)). Indeed, "[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Id.* at 274; *see also Morgan v. Fiorentino*, 811 F. App'x 798, 803 (3d Cir. 2020) ("To prevail on a non-legislative substantive due process claim, 'a plaintiff must establish as a threshold matter that [s]he has a protected property interest to which the Fourteenth Amendment's due process protection applies.'") (quoting *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139–40 (3d Cir. 2000)).

Because the Court finds the Officer Defendants are entitled to qualified immunity as to Plaintiff's Fourth Amendment claim, the Court finds they are similarly immune to Plaintiff's Fourteenth Amendment claims, to the extent Plaintiff's Complaint even plausibly asserts a procedural or substantive due process claim. As to procedural due process, the Court also notes that Plaintiff's Complaint fails to identify what process was owed. *See Washington v. Hanshaw*, 552 F. App'x 169, 174 (3d Cir. 2014) (finding plaintiff "failed to carry his burden of demonstrating

that [d]efendant's conduct deprived him of any constitutionally-protected procedural due process right" because plaintiff's "brief merely recites the elements of a procedural due process claim without explaining what process he was owed and how that process was denied"). Plaintiff's assertion that the Officer Defendants had "an affirmative duty to comply with the City of Newark's Sanctuary City Ordinance," (ECF No. 1-2 *12), is insufficient. As to substantive due process, Plaintiff similarly fails to identify a relevant substantive due process right. (*See generally* ECF No. 1-2.) To the extent Plaintiff is alleging she was deprived of a liberty interest without probable cause, the Court finds that Plaintiff's puzzling briefing, which confuses substantive due process and equal protection, muddies the waters to a fatal degree. For all of the above-mentioned reasons, the Court finds that Plaintiff's Fourteenth Amendment claims fail. The Newark Defendants' Motion to Dismiss, as to Plaintiff's Fourteenth Amendment claims, is therefore **GRANTED**. Count Two of the Complaint is **DISMISSED WITHOUT PREJUDICE**.

### D.    Plaintiff's *Monell* Claim

Plaintiff brings Count Three of the Complaint against the City Defendants, seeking to impose *Monell* liability against them for violations of her constitutional rights. (ECF No. 1-2 at *12–*13.)

"A municipality or other local government may be liable under [Section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)). However, under § 1983, "local governments are responsible only for their *own* illegal acts" and "are not vicariously liable under § 1983 for their employees' actions." *Id.* (internal citations and quotations omitted) (emphasis in original); *see also Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) ("A municipality

18

cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior.*"). Therefore, "[a] municipality may incur liability under § 1983 only when its policy or custom causes a particular constitutional violation." *Marable v. W. Pottsgrove Twp.*, 176 F. App'x 275, 282–83 (3d Cir. 2006) (citing *Monell*, 436 U.S. at 694). Furthermore, a district court "must review claims of municipal liability independently of the [S]ection 1983 claims against the individual police officers." *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004) (internal quotation omitted).

Plaintiff argues that "[t]here are several avenues of relief available under *Monell* liability, none of which can be fully determined at this early stage of litigation without the benefit of discovery." (ECF No. 23 at 27.) Plaintiff further contends that she expects discovery to reveal "the City of Newark had a practice of arresting, detaining, and turning custody of noncitizens over to [I.C.E.] for immigration violations in violation of federal statutory and constitutional law." (*Id.*) Plaintiff argues that such practices "were the motivation behind the City of Newark's [s]anctuary [c]ity Executive Order." (*Id.* at 28.) Plaintiff also points to a handful of cases wherein courts found that pre-discovery dismissal of *Monell* claims was premature. (*Id.* at 28–29.)

### 1. Plaintiff Fails to Adequately Plead the Existence of an Official Policy or Custom

Here, the Court finds Plaintiff has failed to adequately plead the existence of an official policy or custom, implemented by the City Defendants, that caused her alleged injuries. "*Monell* . . . created a two-path track to municipal liability, depending on whether a § 1983 claim is premised on a municipal policy or custom."  *McTernan v. City of N.Y.*, 564 F.3d 636, 657 (3d Cir. 2009) (internal quotation marks and citation omitted).

> A government policy or custom can be established in two ways.
> Policy is made when a decisionmaker possess[ing] final authority to
> establish a municipal policy with respect to the action issues an

19

> official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of officials [are] so permanently and well settled as to virtually constitute law. . . . Custom requires proof of knowledge and acquiescence by the decisionmaker.

*Id.* (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (internal quotation marks omitted).

Federal Rule of Civil Procedure 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief" that rises "above the speculative level." *Phillips,* 515 F.3d at 231–32 (quotation omitted). The Court finds Plaintiff's threadbare conclusion that Defendants acted pursuant to an official policy or custom insufficient to state a claim. First, Plaintiff fails to identify, with the requisite specificity, the policy or custom she is alleging exists. Plaintiff merely alleges that the City Defendants "developed and maintained polices, practices[,] and customs exhibiting deliberate indifference to the constitutional rights of persons of the State of New Jersey which caused violations of Plaintiff's constitutional and other rights." (ECF No. 1-2 at *12.) "To satisfy the pleading standard, [the plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan*, 564 F.3d at 658 (citing *Phillips,* 515 F.3d. at 232 ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Second, Plaintiff fails to identify any decisionmaker with the requisite authority to establish such an unconstitutional policy or custom. Indeed, the only decisionmaker Plaintiff identifies is Mayor Baraka, who is not alleged to have any involvement in the substantive allegations of the Complaint. (*See generally* ECF No. 1-2.) Critically, Mayor Baraka is not a named Defendant; nor has Plaintiff named the Chief of Police or any other Police Department Supervisor. Plaintiff's assertion that the City Defendants' illegal policy or custom was the impetus behind the

issuance of the executive order is, without further factual allegations, insufficient to state a claim for *Monell* liability.

### 2.      Plaintiff Fails to State a Claim for Failure to Train

Count Three further seeks to impose *Monell* liability upon the City Defendants for their failure to adequately train the Officer Defendants and other City employees. (ECF No. 1-2 at *12–*13.) Plaintiff alleges that the City Defendants' "training programs, monitoring, and supervision failed to actually train their officers and employees to handle the frequent, usual, and reoccurring situations where an individual is suspected of nothing more than a civil immigration violation." (*Id.*) Plaintiff further asserts this failure "made it highly predictable that [the City Defendants'] officers and employees would engage in conduct that would deprive individuals" of their rights under the U.S. and New Jersey Constitutions. (*Id.* at *13.)

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 822–23 (1985) (plurality opinion)). To state a claim for failure to train, a Plaintiff must show that: (1) "the defendant failed to offer some specific training that would have prevented the deprivation of the plaintiff's constitutional rights" and (2) "that the defendant's failure to train or supervise employees amounted to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Mattern v. City of Sea Isle*, 131 F. Supp. 3d 305, 318 (D.N.J. 2015), *aff'd*, 657 F. App'x 134 (3d Cir. 2016) (internal citations and quotations omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999).

Here, the Court finds the allegations of the Complaint fail to adequately allege that Defendant's failure to train amounted to "deliberate indifference" to the constitutional rights of Plaintiff or others. Plaintiff, therefore, has failed to state a claim for failure to train. Because the Court finds Plaintiff has failed to state a claim for *Monell* liability, the Newark Defendants' Motion to Dismiss, as to Plaintiff's *Monell* claims, is **GRANTED**. Count Three of the Complaint is **DISMISSED WITHOUT PREJUDICE**.

### E.      Plaintiff's NJCRA and New Jersey Constitutional Claims

Plaintiff brings Count Four of the Complaint, against all Defendants, for violations of the NJCRA and paragraphs 5 and 7 of the New Jersey Constitution. (ECF No. 1-2 at *13–*14.)

The NJCRA provides, in relevant part,

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, . . . may bring a civil action for damages and for injunctive or other appropriate relief.

N.J. Stat. Ann. § 10:6-2(c). The New Jersey Constitution, Article 1, ¶ 5 states in relevant part, "No person shall be . . . discriminated against in the exercise of any civil or military right, . . . because of religious principles, race, color, ancestry or national origin." N.J. Const. art. I, ¶ 5. The New Jersey Constitution, Article 1, ¶ 7 states in relevant part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." N.J. Const. art. I, ¶ 7.

The NJCRA was modeled on § 1983 and similarly "provides a means of vindicating substantive rights guaranteed by federal law and New Jersey's Constitution and laws[,] and is not a source of rights itself." *Lapolla v. Cty. of Union*, 157 A.3d 458, 469 (N.J. Super. Ct. App. Div. 2017). "This district has repeatedly interpreted NJCRA analogously to § 1983." *Trafton*, 799 F.

Supp. 2d at 443 (D.N.J. 2011) (citing *Chapman v. New Jersey,* No. 08–4130, 2009 WL 2634888, *3 (D.N.J. August 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart")).

### 1. Municipal Liability Against the City Defendants

"To sustain a § 1983 claim, or a NJCRA claim [for municipal liability], a plaintiff must show that a defendant had in place a custom or policy which resulted in [a] constitutional deprivation." *Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 241 (3d Cir. 2012) (citing *Stomel v. City of Camden*, 927 A.2d 129, 145 (N.J. 2007)). As discussed in Section III.D., *supra*, Plaintiff has failed to adequately plead the existence of a municipal custom or policy that resulted in a constitutional deprivation. Plaintiff's NJCRA claim, as to the City Defendants, similarly fails.

### 2. The Officer Defendants Are Entitled to Qualified Immunity on Plaintiff's State Law Civil Rights Claims

The doctrine of qualified immunity "extends to suits brought under [Section 1983] and under New Jersey's analogue, the [NJCRA]." *Morillo*, 117 A.3d at 1208. As discussed in Section III.C.3.ii, *supra*, the Court finds that, under the facts alleged, the Officer Defendants are entitled to qualified immunity. Plaintiff's NJCRA and New Jersey constitutional claims, as to the Officer Defendants, therefore fail. The Newark Defendants' Motion to Dismiss, as to Plaintiff's state civil rights claims, is **GRANTED**. Count Four of the Complaint is **DISMISSED WITHOUT PREJUDICE**.

### F. Plaintiff's NJLAD Claim

Plaintiff brings Count Five of the Complaint, against all Defendants, for violations of the NJLAD. (ECF No. 1-2 at *14–*15.) The NJLAD broadly prohibits discrimination on the basis of a litany of enumerated factors including, *inter alia*, race, creed, color, national origin, ancestry,

age, sexual orientation, and gender identity. *See generally* N.J. Stat. Ann. §§ 10:5-1, *et seq.* The NJLAD also makes it unlawful,

> For any owner, lessee, proprietor, manager, superintendent, agent, *or employee of any place of public accommodation* directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof. . . ."

N.J. Stat. Ann. § 10:5-12(f)(1) (emphasis added). A "police department—both the building and the individual officers—is a place of public accommodation." *Ptaszynski v. Uwaneme*, 853 A.2d 288, 297 (N.J. Super. Ct. App. Div. 2004); *see also Delbridge v. Whitaker*, No. 09-4227, 2010 WL 1904456, at *6 (D.N.J. May 10, 2010) (noting that "this District has held that police stations and prisons are places of public accommodation"). "A municipal police force is nothing more than an executive and enforcement function of municipal government . . . [a]s a public entity, by its very nature a police force is a place of public accommodation." *Id.* (internal quotation and citation omitted). Because the purpose of the NJLAD is "nothing less than the eradication of the cancer of discrimination," *Dale v. Boy Scouts of Am.*, 734 A.2d 1196, 1208 (N.J. 1999), *rev'd & remanded on other grounds*, 530 U.S. 640 (2000), "[i]f a police force is not subject to the [NJ]LAD, subject to certain constitutional limitations, the officers may be free to discriminate." *Ptaszynski*, 853 A.2d at 297.

### 1.    The Parties' Positions

The Newark Defendants advance two principal arguments: (1) Plaintiff's NJLAD claim is preempted by federal immigration law, and (2) Plaintiff has failed to allege the prima facie elements of an NJLAD claim (ECF No. 9-1 at 10–14.) The Newark Defendants contend by the plain text of the statute, "nothing in [the NJLAD's] expression of policy prevents the making of legitimate distinctions between citizens and aliens when required by federal law or otherwise

necessary to promote the national interest." (*Id.* at 10 (citing N.J. Stat. Ann. § 10:5-3).) The Newark Defendants also argue that courts in this District have held that state and local law enforcement officers are permitted to enforce federal statutes so long as their enforcement does not impair federal activities. (*Id.* at 10–11.) In sum, they conclude that "[g]iven the NJLAD's express exclusion of an intent to interfere with immigration laws, and given the authority of local officers to enforce immigration laws, Plaintiff's attempt to use the NJLAD to invalidate her arrest" is preempted. (*Id.* at 12.) Alternatively, the Newark Defendants contend that Plaintiff has failed to allege a prima facie case of discrimination under the NJLAD. (*Id.*) They argue that there are no well-pleaded allegations that suggest Plaintiff was subject to any discriminatory action on the basis of her membership in a protected class. (*Id.* at 13–14.)

In opposition to the Newark Defendants preemption argument, Plaintiff asserts that "the civil immigration laws preempted . . . [P]laintiff's arrest" and that [n]onetheless, the [Officer Defendants] took her to the precinct and held her there without legal justification[,] but rather to harass her in accordance with the ill will" of Saldida. (ECF No. 23 at 33.) In opposition to the Newark Defendants argument that she has failed to allege the elements of an NJLAD claim, Plaintiff states that she is from Brazil, was physically assaulted by the Officer Defendants, and during her transport to the precinct was taunted "with epithets and phrases like, 'I love Trump,' and 'you can thank Trump.'" (*Id.* at 31.) She argues her detention "was not premised on a violation of the law but rather on an arbitrary and capricious arrest executed as a favor to the [Officer Defendants'] former deputy police chief," Saldida. (*Id.* at 32.) Plaintiff contends that "the mention of the Trump administration alone, which symbolizes to many immigrants an anti-immigration administration, shows a discriminatory basis for her arrest as a Latin undocumented woman." (*Id.*)

### 2.   The Newark Defendants' Motion to Dismiss

To state a claim under the NJLAD for discrimination by a place of public accommodation, a Plaintiff must, (1) "demonstrate that she is a member of a protected class"; (2) must "show that the defendant's actions were motivated by discrimination"; and (3) must demonstrate that "others not within the protected class did not suffer similar adverse . . . actions." *Partovi v. Felician Coll.*, No. A-1961-09T1, 2011 WL 867275, at *7–8 (N.J. Super. Ct. App. Div. Mar. 15, 2011) (internal quotations and citations omitted) (alteration in original); *see also Brooks v. Codispoti*, No. 12-5884, 2015 WL 9462086, at *10 (D.N.J. Dec. 28, 2015) ("Since *Ptaszynski* did not identify the legal standard to be used, [c]ourts in the District of New Jersey have held that violations of the public accommodation provisions of the NJLAD may be assessed under the same standards as Equal Protection Claims in federal anti-discrimination law.").

"[C]onclusory allegation of discrimination does not satisfy the pleading requirements" for an NJLAD public accommodation claim. *Partovi*, 2011 WL 867275, at *8 (citing *Glass v. Suburban Restoration Co.*, 722 A.2d 944, 948 (N.J. Super. Ct. App. Div. 1998) ("It has long been established that pleadings reciting mere conclusions without facts and reliance on subsequent discovery do not justify a lawsuit.")). Additionally, "[t]he prohibition of discrimination based on 'national origin' does not prohibit discrimination on the ground of citizenship." *Rojas v. City of New Brunswick*, No. 04-3195, 2008 WL 2355535, at *27 (D.N.J. June 4, 2008) (citing *Mattus v. Facility Solutions, Inc.*, No. 05-0863, 2005 WL 3132190, at *8 (D.N.J. Nov. 21, 2005); *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 89 (1973) ("Congress did not intend the term 'national origin' to embrace citizenship requirements.").

Here, the Court finds Plaintiff has failed to adequately plead a cause of action under the NJLAD. Although Plaintiff contends she was unlawfully arrested, her arrest, whether lawful or

unlawful, was premised on her status as an undocumented immigrant; it was not based on her national origin. Plaintiff's allegations that the Officer Defendants taunted her with pro-Trump comments on the drive to the precinct are, without more, too conclusory to sustain a claim for discrimination. Additionally, Plaintiff has failed to allege facts that indicate others outside of her protected class received different treatment. The Court finds, therefore, that Plaintiff has failed to state a claim for violations of the NJLAD. *See Partovi*, 2011 WL 867275, at \*8 (affirming the dismissal of a plaintiff's NJLAD claim, in part because "Plaintiffs did not allege any facts that indicate that [an individual plaintiff] was treated differently than other students based on her national origin or any other protected characteristic."). The Newark Defendants' Motion to Dismiss, as to Plaintiff's NJLAD claim, is **GRANTED**. Count Five of the Complaint is **DISMISSED WITHOUT PREJUDICE**.

### G.       Plaintiff's Abuse of Process Claim

Plaintiff brings Count Six of the Complaint, against all Defendants, for abuse of the legal process. (ECF No. 1-2 at \*15.) Once again, Plaintiff's Complaint provides no specificity as to the specific type of claim she is asserting. (*See id.*) Plaintiff does not state, for example, whether she intends to bring a claim for malicious prosecution or abuse of civil process, nor does she even state that she brings her claim pursuant to the New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1, *et seq.*[12] (*See generally id.*)

"Tort claims against public entities and public employees are governed by the [NJTCA]." *Ingram v. Twp. of Deptford*, 858 F. Supp. 2d 386, 400 (D.N.J. 2012) (collecting cases). "The NJTCA requires that a notice of claim must be filed with the public entity not later than the

---

[12] Other than the NJTCA, "no tort cause of action lies against a public entity of this state." *Myers v. Medford Lakes Bd. of Educ.*, 489 A.2d 1240, 1242 (N.J. Super. Ct. App. Div. 1985) (citing N.J. Stat. Ann. §§ 59:1–2, 59:2–1).

ninetieth (90th) day after accrual of the underlying cause of action. *Id.* (citing N.J. Stat. Ann. § 59:8–8(a)). "Failure to file the required notice will result in the dismissal of the Plaintiff's tort claims." *Id.* (citing N.J. Stat. Ann. § 59:8–3 ("No action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter.")).

"Malicious use of process is one of a group of closely related torts that . . . are treated with great caution because of their capacity to chill resort to our courts by persons who believe that they have a criminal complaint or civil claim against another." *LoBiondo v. Schwartz*, 970 A.2d 1007, 1022 (N.J. 2009) (citation omitted). "Malicious prosecution provides a remedy for harm caused by the institution or continuation of a criminal action that is baseless." *Id.* (citing *Earl v. Winne,* 101 A.2d 535 (N.J. 1953)). "Malicious use of process is essentially the analog used when the offending action in question is civil rather than criminal." *Id.* (citing *Penwag Prop. Co. v. Landau,* 388 A.2d 1265 (N.J. 1978)).

To state a claim for malicious use of process in New Jersey, a Plaintiff must establish that: "(1) the malicious-use-of-process defendant instituted an action against the plaintiff; (2) the defendant's action was motivated by malice; (3) the action lacked probable cause; (4) the action was terminated favorably to plaintiff; and (5) plaintiff suffered a 'special grievance.'" *Ross v. Annunziata*, 2012 WL 653840, at *10 (N.J. Super. Ct. App. Div. Feb. 29, 2012) (citing *LoBiondo*, 970 A.2d at 1022. Claims for abuse of process, outside of the context of SLAPP litigation,[13] are disfavored "out of fear that its use could chill free access to the courts. . . . The elements of the tort place severe restrictions on a plaintiff's ability to recover, thus recognizing the counter-policy of

---

[13] SLAPP stands for Strategic Lawsuit Against Public Participation.

free access to judicial bodies." *Brennan v. Lonegan*, 2010 WL 5140448, at *3 (N.J. Super. Ct. App. Div. Dec. 20, 2010).

### 1.    The Parties' Positions

The BluLine Defendants argue that "[t]here is no allegation that they caused the issuance of any warrant or [caused the] arrest of Plaintiff" and no allegation they were involved with or responsible for the 2005 deportation order that was issued. (ECF No. 8-4 at 24.) They conclude that, despite Plaintiff's arguments to the contrary, there was no "'process' that Plaintiff can point to that was abused" by the BluLine Defendants. (*Id.*)

The Newark Defendants advance several arguments in support of their Motion. First, as to the City only, the Newark Defendants argue that the City is immune to all intentional tort claims, including those for abuse of process and, accordingly, Plaintiff's abuse of process claim against them must fail. (ECF No. 9-1 at 14.) Additionally, the Newark Defendants argue that Plaintiff's claim is barred because she did not file the requisite notice of claim. (*Id.* at 15.) They note that there is no allegation that Plaintiff filed "an initial or supplemental notice of claim" and that, accordingly the abuse of process claims against the Newark Defendants should be dismissed. (*Id.*) The Newark Defendants further contend that "regardless of whether Plaintiff intended to plead malicious prosecution or abuse of civil process," neither claim is viable as to the Officer Defendants. (*Id.* at 17.)

In opposition to the BluLine Defendants' Motion, Plaintiff argues that "it is [] reasonable to infer that the call [made by Saldida] was made in order to prevent [] Plaintiff's appearance in court proceedings against her estranged husband." (ECF No. 10 at 5.) Plaintiff characterizes the BluLine Defendants' arguments as "an attempt to deflect liability by blaming the order of deportation for Plaintiff's arrest instead of [blaming] Dominic Saldida's call." (*Id.* at 7.) She further

argues that if Saldida's "motive was simply to report an undocumented person," he could have simply contacted the Department of Homeland Security rather than the Police Department. Saldida's motive, according to Plaintiff, "was to have the threat [of her testifying] immediately removed" and that he did so by exerting his influence, as a retired Deputy Police Chief, over the Police Department.[14] Plaintiff notes that the order for deportation had been pending for twelve years without action and that she had not committed any criminal acts that would have brought her to the attention of the Department of Homeland Security. (*Id.*)

In opposition to the Newark Defendants' Motion, Plaintiff asserts that she is bringing a claim for malicious abuse of process and that the Officer Defendants "used their power as police officers to make an unlawful arrest of [] [P]laintiff . . . for the sole purpose" of harassing her and intimidating her so that she would not testify against her estranged husband. (ECF No. 23 at 35.) In response to the Newark Defendants' argument that her claim should be dismissed for failure to file a proper notice, Plaintiff contends that dismissal would be premature because the Officer Defendants will not have immunity if it is proven that they acted "willfully and intentionally." (*Id.* at 36.)

### 2. The BluLine Defendants' Motion

The Court finds Plaintiff has failed to state a claim for abuse of process as to the BluLine Defendants. While the Court accepts all well-pleaded facts as true and is required to draw all

---

[14] Plaintiff's Opposition to the BluLine Defendants' Motion appears to include new factual allegations and details that were not included in the Complaint. For example, Plaintiff adds new details relating to the alleged threatening call made by the attorney for Frank Aiello. (ECF No. 10 at 7.) Plaintiff also alleges for the first time that Saldida "knew his power and influence over the officers would cause them to act immediately" to arrest Plaintiff. (*Id.*) As discussed *supra* in footnote 5, a party may not make new factual allegations in a brief. *See Olson*, 724 F. App'x at 166. If Plaintiff wishes to supplement her factual allegations, the proper recourse is for her to file an amended complaint.

reasonable inferences in Plaintiff's favor, Plaintiff's factual allegations, as currently presented to the Court, are too speculative to sustain a cause of action.

Although the Court is seriously concerned by the nature of Plaintiff's allegations—namely, that Saldida made the call to the Newark Defendants with the intent to prevent Plaintiff from testifying against her estranged husband; that the Officer Defendants entered Plaintiff's apartment without a warrant; and that Plaintiff's three young children were left unattended in her apartment while she was transported to the precinct—the allegations of the Complaint, without more, are too conclusory. Plaintiff, for example, has not alleged a motive for Saldida wanting to prevent Plaintiff from testifying Aiello.[15] Neither has Plaintiff named Aiello or his attorney, who Plaintiff alleges made a telephone call to one of Plaintiff's friends to threaten Plaintiff with deportation, as a party in this matter. In sum, the Complaint, as currently stated, does not allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a claim. *Phillips*, 515 F.3d at 234.

The BluLine Defendants' Motion to Dismiss, to the extent it seeks dismissal of Plaintiff's abuse of process claim, is therefore **GRANTED**. Counts Six, as to the BluLine Defendants, is **DISMISSED WITHOUT PREJUDICE**.

### 3.    The Newark Defendants' Motion as to the City Only

As a preliminary matter, Plaintiff stats that she "does not object [the] dismissal of the claim for abuse of process" against the City. (ECF No. 23 at 35.) The Newark Defendants' Motion to

---

[15] Plaintiff appears to allege a motive in her opposition brief. (*See* ECF No. 23 at 2 ("It is believed Dominic Saldida was assisting Mr. Aiello and Mr. Aiello's attorney under his security company, BluLine Security Consulting. . . .").) Because it is axiomatic a party may not amend a complaint by way of an opposition brief, the Court disregards this claim for the purposes of the instant motions.

Dismiss, to the extent it seeks dismissal of Plaintiff's abuse of process claim against the City, is therefore **GRANTED**. Counts Six, as to the City, is **DISMISSED WITH PREJUDICE**.

### 4. The Newark Defendants' Motion as to the Officer Defendants

Under the NJTCA, a plaintiff is required to file a notice of claim with the public entity within 90 days of the accrual of the underlying action and failure to do so is grounds for dismissal of the claim. *See Ingram*, 858 F. Supp. 2d at 400. Here, Plaintiff has failed to plead that she filed the requisite notice of claim. (*See generally*, ECF No. 1-2.) Plaintiff's argument that dismissal on such grounds would be premature because it may later be found that the Officer Defendants had acted "willfully and intentionally," and are therefore not entitled to immunity, is unavailing. The notice requirement is a threshold requirement and not conditioned on whether a defendant may or may not be entitled to immunity. The Newark Defendants' Motion to Dismiss, to the extent it seeks dismissal of Plaintiff's abuse of process claim against the Officer Defendants for failure to file a notice of claim, is therefore **GRANTED**. Counts Six, as to the Officer Defendants, is **DISMISSED WITHOUT PREJUDICE**. *See, e.g.*, *Ingram*, 858 F. Supp. 2d at 400 ("The Plaintiff's complaint does not allege that she filed notice in accordance with the [NJTCA]. Therefore, the Plaintiff's complaint fails to state a claim . . . and must be dismissed.")

### H. Plaintiff's Punitive Damages Claim

Finally, Plaintiff brings Count Seven of the Complaint, against all Defendants, seeking an award of punitive damages. (ECF No. 1-2 at *16.) "To establish a claim for punitive damages under the Punitive Damages Act, a plaintiff must prove, by clear and convincing evidence, that . . . the defendant's acts or omissions . . . were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." *Tafaro v. Six Flags Great Adventure, LLC*, No. 17-5607, 2018 WL 1535289, at *8

(D.N.J. Mar. 29, 2018) (citing N.J. Stat. Ann. § 2A:15–5.12) (internal quotation omitted). The Punitive Damages Act includes a non-exclusive list of factors a Court should consider when determining if punitive damages are appropriate, including:

> (1) The likelihood, at the relevant time, that serious harm would arise from the defendant's conduct;
> (2) The defendant's awareness of reckless disregard of the likelihood that the serious harm at issue would arise from the defendant's conduct;
> (3) The conduct of the defendant upon learning that its initial conduct would likely cause harm; and
> (4) The duration of the conduct or any concealment of it by the defendant.

N.J. Stat. Ann. § 2A:15–5.12(b). "Overall, courts have described the punitive damages standard as a strict one; punitive damages are limited to only 'exceptional cases.'" *Tafaro*, 2018 WL 1535289, at *9.

### 1.     The Parties' Positions

The BluLine Defendants argue that because Plaintiff has failed to state a claim as to them, her claim for punitive damages necessarily fails. (*See generally* ECF No. 8-4.) Alternatively, they argue that Plaintiff's claim must be dismissed because "Plaintiff has alleged no evidence of actions by the BluLine Defendants to support any claims of malicious, willful and wanton conduct." (*Id.*)

The Newark Defendants argue that Plaintiff is not entitled to punitive damages against the City under the NJTCA, the NJCRA or Section 1983 because, as a matter of law, the City cannot be held liable for punitive damages under these statutes. (ECF No. 9-1 at 7.) As to Plaintiff's claim for punitive damages pursuant to her NJLAD claim, the Newark Defendants argue that Plaintiff's claim is precluded because she has not alleged wrongful conduct by "upper management." (*Id.* at 8–9.)

In opposition to the BluLine Defendants' Motion, Plaintiff argues that because she has sufficiently pleaded a cause of action for abuse of process against the BluLine Defendants, dismissal of her claims for punitive damages is premature. (ECF No. 12 at 9.) In opposition to the Newark Defendants' Motion, Plaintiff states she "agrees that the [City] cannot be found liable from punitive damages under [her] § 1983 claims" and does not oppose those claims being dismissed as to the City only. (ECF No. 23 at 38.) Plaintiff, however, opposes the Newark Defendants' effort to dismiss her claim for punitive damages under the NJLAD as to the City as "premature" and also opposes any effort to dismiss a claim for punitive damages as to the Officer Defendants. (*Id.* at 38–39.)

### 2.    The BluLine Defendants' Motion

Here, because the Court has dismissed Plaintiff's abuse of process claim as to the BluLine Defendants, there are no substantive claims remaining against the BluLine Defendants. Plaintiff's claim for punitive damages against the BluLine Defendants, therefore, necessarily fails. The BluLine Defendants' Motion to Dismiss, to the extent it seeks dismissal of Plaintiff's claim for punitive damages, is therefore **GRANTED**. Counts Seven, as to the BluLine Defendants, is **DISMISSED WITHOUT PREJUDICE**.

### 3.    The Newark Defendants' Motion

#### i.    Punitive Damages Against the City Defendants Under the NJCRA, Section 1983, and the TCA

As a preliminary matter, "[m]unicipalities are immune from punitive damages on § 1983 and § 1985 claims." *Joyce v. City of Sea Isle City*, No. 04-5345, 2008 WL 906266, at *25 (D.N.J. Mar. 31, 2008), *on reconsideration in part sub nom. Joyce v. Sea Isle City*, No. 04-5345, 2008 WL 2875456 (D.N.J. July 23, 2008) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)). Additionally, "the [NJ]TCA expressly bars recovery of punitive damages against public

entities." *Mantz v. Chain*, 239 F. Supp. 2d 486, 508 (D.N.J. 2002) (citing N.J. Stat. Ann. § 59:9–2(c) ("No punitive or exemplary damages may be awarded against a public entity")). The NJCRA similarly does not authorize punitive damages against municipalities. *See Matheny Sch. & Hosp. v. Borough of Peapack & Gladstone*, No. 13-6802, 2014 WL 4215453, at *3 (D.N.J. Aug. 25, 2014); *Vandegrift v. Bowen*, No. 07-2623, 2009 WL 1913412, at *6 (D.N.J. June 30, 2009). The Newark Defendants' Motion to Dismiss, to the extent it seeks dismissal of Plaintiff's claims for punitive damages against the City Defendants under Section 1983, the NJCRA, and the NJTCA, is therefore **GRANTED**. Count Seven, as to claims for punitive damages against City Defendants pursuant to those statutes, is **DISMISSED WITH PREJUDICE**.

ii.        **Punitive Damages From the City Defendants Under the NJLAD**

A plaintiff can recover punitive damages from a public entity under the NJLAD. *Gaston v. N.J., Dep't of Law & Pub. Safety, Div. of State Police*, No. 05-3006, 2008 WL 540853, at *16 (D.N.J. Feb. 25, 2008), *aff'd sub nom.*, *Gaston v. New Jersey*, 298 F. App'x 165 (3d Cir. 2008) (citing *Cavuoti v. N.J. Transit Corp.*, 735 A.2d 548 (1999)). However, "[a] plaintiff asserting a punitive damages claim in [an NJ]LAD case against a public entity . . . must meet a high standard." *Aguas v. State*, 107 A.3d 1250, 1272 (N.J. 2015). "[T]here are two prerequisites before a Court can award punitive damages in a discrimination suit under NJLAD: "(1) 'actual participation in or willful indifference to wrongful conduct on the part of upper management;' and (2) 'proof that the offending conduct is especially egregious.'" *Gaston*, 2008 WL 540853, at *16 (citation omitted). "[D]efining [an] employer's 'upper management' is a fact-sensitive inquiry that does not depend[] on labels or titles but on whether an employee possesses significant power, discretion and influence."*Aguas*, 107 A.3d at 1272 (citing *Lockley v. State of N.J. Dep't Of Corr.*, 828 A.2d 869, 876 (N.J. 2003)).

As discussed *supra* in Section III.D, Plaintiff has failed to plead the existence of a supervisor or decisionmaker who was involved in, or indifferent to, the conduct alleged in the Complaint. Critically, Plaintiff does not argue that the Officer Defendants were decisionmakers. (*See* ECF No. 23 at 39.) Rather, Plaintiff argues that "[d]iscovery will reveal whether upper management acted in concert or approved the actions of [the Officer Defendants]" and contends that "[t]his is not far-fetched considering the influence and power of Dominic Saldida . . . over the City's [P]olice [D]epartment." (*Id.*) While the Federal Rules do not contemplate a probability requirement, Plaintiff's (1) failure to name a decisionmaker, (2) failure allege the existence of a decisionmaker, (3) failure allege that either of the Officer Defendants were upper management, and (4) failure to provide sufficient factual predicate that Saldida exerted influence over the Police Department is fatal to her claim for punitive damages against the City. The Newark Defendants' Motion to Dismiss, to the extent it seeks dismissal of Plaintiff's claims for punitive damages against the City Defendants under the NJLAD, is therefore **GRANTED**. Count Seven, as to a claim for punitive damages against City Defendants pursuant to the NJLAD, is **DISMISSED WITHOUT PREJUDICE**.

### iii.        The Officer Defendants[16, 17]

"[P]unitive damages are not available against municipal employees when sued in their official capacities." *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988); *see also Joyce*, 2008 WL 906266, at *25. A plaintiff can, however, recover punitive damages against a police

---

[16] Plaintiff brings suit against the Officer Defendants in both their official and individual capacities. (*See* ECF No. 1-2 at *5–*6.)

[17] The Newark Defendants do not specifically address the issue of punitive damages as to the Officer Defendants in their moving brief, however, as noted above, the Newark Defendants do argue that the Officer Defendants are entitled to qualified immunity. (*See generally* ECF No. 9-1.)

officer sued in his or her individual capacity. *See Joyce*, 2008 WL 906266, at *25. "Plaintiffs are entitled to punitive damages only if they can establish that 'the defendants have acted with a reckless or callous disregard of, or indifference to, the rights and safety of others.'" *Id.* (quoting *Keenan v. City of Phila.*, 983 F.2d 459, 470–71 (3d Cir. 1992)). "The standard of 'callous or reckless indifference' is an objective one, inquiring 'whether a reasonable officer would have known that his conduct violated a clearly established constitutional right.'" *Id.* (quoting *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 873 (M.D. Pa. 2000)).

"[W]hile the [NJ]TCA expressly bars recovery of punitive damages against public entities, . . . New Jersey courts have held that no such immunity exists [under the NJTCA] for public employees." *Mantz v. Chain*, 239 F. Supp. 2d 486, 508 (D.N.J. 2002) (internal quotations and citations omitted) (second alteration in original).

Here, because the Court finds Plaintiff has failed to establish a single cause of action as to the Officer Defendants Plaintiff's claims for punitive damages on against the Officer Defendants necessarily fail. The Newark Defendants' Motion to Dismiss, to the extent it seeks dismissal of Plaintiff's claims for punitive damages against the Officer Defendants, is therefore **GRANTED**. Count Seven, as to a claim for punitive damages against the Officer Defendants is **DISMISSED WITHOUT PREJUDICE**.

**IV.**     **CONCLUSION**

For the reasons set forth above, the BluLine Defendants' Motion to Dismiss is **GRANTED** and the Newark Defendants' Motion to Dismiss is **GRANTED**. An accompanying Order will follow.


**Date: August 31, 2020**                              *s/ Brian R. Martinotti*
                                                        **HON. BRIAN R. MARTINOTTI**
                                                        **UNITED STATES DISTRICT JUDGE**