NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREA FLORENTINO,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF NEWARK, *et al.*,<br><br>Defendants. | Case No. 2:19-cv-21055 (BRM) (ESK)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendants City of Newark (the "City"), Darnell Henry ("Chief Henry"), Rafael Ramos ("Detective Ramos"), and John Rodrigues ("Lieutenant Rodrigues") (Detective Ramos and Lieutenant Rodrigues together, the "Officer Defendants" and with the City and Chief Henry, the "Newark Defendants"), and a Motion to Dismiss filed by Defendants BluLine Security Consulting, LLC ("BluLine") and Dominic Saldida ("Saldida") (collectively, the "BluLine Defendants" and with the Newark Defendants, "Defendants"), seeking to dismiss the Amended Complaint of Plaintiff Andrea Florentino ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 37, 42.) Plaintiff opposed Defendants' Motions (ECF Nos. 41, 44), and Defendants replied (ECF Nos. 43, 45). Having reviewed the parties' submissions filed in connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, the Newark Defendants' Motion to Dismiss is **GRANTED** and the BluLine Defendants' Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**.

**I.     BACKGROUND**

The underlying facts of this matter are set forth at length in the Court's August 31, 2020 Opinion. (ECF No. 28.) In the interest of judicial economy, the Court refers the parties to that Opinion for a full recitation of the factual background of this dispute.

On August 28, 2019, Plaintiff filed a seven-count Complaint against the City, the Officer Defendants, the BluLine Defendants, the City of Newark Police Department, and unknown individuals and entities in the Superior Court of New Jersey, Law Division, Essex County alleging: (1) violation of the Fourth Amendment under 42 U.S.C. § 1983 ("Section 1983"); (2) violation of the Fourteenth Amendment under Section 1983; (3) failure to train under Section 1983 ("*Monell*"); (4) violation of the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. §§ 10:6-1, *et seq.*, and Article I, Paragraphs Five and Seven of the New Jersey Constitution; (5) violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1, *et seq.*; (6) abuse of process; and (7) punitive damages. (*See generally* ECF No. 1-2.) On December 4, 2019, the City and Lieutenant Rodrigues, with the consent of the BluLine Defendants, removed the matter to this Court pursuant to 28 U.S.C. §§ 1441 and 1446(a). (ECF No. 1.) On January 6, 2020, the BluLine Defendants filed a Motion to Dismiss Plaintiff's Complaint. (ECF No. 8.) On January 24, 2020, the City, the Officer Defendants, and the City of Newark Police Department filed a Motion to Dismiss Plaintiff's Complaint. (ECF No. 9.) On August 31, 2020, the Court granted both Motions and dismissed: (1) Counts One through Five against the BluLine Defendants with prejudice; (2) Counts Six and Seven against the BluLine Defendants without prejudice; (3) Counts One through Six against the City and Officer Defendants without prejudice; (4) all counts against the

City of Newark Police Department with prejudice; and (5) Count Seven against the City and Officer Defendants.[1] (*See generally* ECF No. 29.)

On October 5, 2020, Plaintiff filed an Amended Complaint against Defendants and unknown individuals and entities. (*See generally* ECF No. 36.) Plaintiff alleges: (1) violation of the Fourth Amendment under Section 1983 against the Officer Defendants; (2) violation of the Fourteenth Amendment's Due Process and Equal Protection Clauses under Section 1983 against the Officer Defendants; (3) a *Monell* claim against the City and Chief Henry; (4) violation of the NJCRA and Article I, Paragraphs Five and Seven of the New Jersey Constitution against "All Government Defendants"; (5) violation of the NJLAD against "All Government Defendants"; (6) malicious use of process and malicious prosecution against the BluLine Defendants; and (7) punitive damages against all Defendants except the City. (*Id.* at 8–18.) Plaintiff's Amended Complaint concerns her August 29, 2017 arrest by the Officer Defendants and subsequent ankle monitor placement related to an open immigration deportation order by United States Immigration and Customs Enforcement ("ICE") and the United States Department of Homeland Security ("DHS"). (*See generally id.*; *see also* ECF No. 28 at 2–5.)

On October 6, 2020, the Newark Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 37.) Plaintiff opposed (ECF No. 41), and the Newark Defendants replied (ECF No. 43). On October 19, 2020, the BluLine Defendants filed a Motion to Dismiss. (ECF No. 42.) Plaintiff opposed (ECF No. 44), and the BluLine Defendants replied (ECF No. 45).

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a

---

[1] The Court dismissed Count Seven (1) against the City with prejudice to the extent Plaintiff sought to recover punitive damages under Section 1983, the NJCRA, and the New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1, *et seq.*; (2) against the City without prejudice to the extent Plaintiff sought to recover punitive damages under the NJLAD; and (3) against the Officer Defendants without prejudice. (ECF No. 29 at 2.)

3

district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

4

However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

### III. DECISION

#### A. Newark Defendants

##### 1. Counts One and Two: Section 1983

Counts One and Two of Plaintiff's Amended Complaint again set forth claims pursuant to Section 1983. (*See* ECF No. 36 at 8–12.) Count One alleges the Officer Defendants, while acting under the color of state law, violated the Fourth Amendment when they arrested Plaintiff without a warrant or probable cause. (*Id.* at 9.) Moreover, Plaintiff maintains the Officer Defendants' actions were in contravention of "[f]ederal law[, which] preempts state or local police from enforcing federal civil immigration laws and does not grant local law enforcement officials the authority to make civil immigration arrests beyond narrow circumstances not relevant to the Plaintiff's arrest." (*Id.* at 8.) Count Two alleges the Officer Defendants, while acting under the color of state law, violated the Due Process and Equal Protection Clauses of the Fourteenth

Amendment. (*Id.* at 11–12 (alleging Plaintiff was arrested, held in custody, and transferred by the Officer Defendants "based on her immigration status and her status as a Latina").)

"The doctrine of qualified immunity shields law enforcement officers from personal liability for civil rights violations when the officers are acting under color of law in the performance of official duties." *Morillo v. Torres*, 117 A.3d 1206, 1208 (N.J. 2015). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and citation omitted). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In its August 31, 2020 Opinion, the Court found, "as pleaded [in Plaintiff's Complaint], the conduct of the Officer Defendants was objectively reasonable under the circumstances." (ECF No. 28 at 16.) Specifically, the Court held the Officer Defendants could have reasonably believed the immigration warrant the Officer Defendants received from DHS created probable cause for entry into Plaintiff's apartment and her subsequent arrest. (*Id.*) The Newark Defendants argue Plaintiff's Amended Complaint "offers no factual basis for changing the Court's legal finding that qualified immunity exists for the [Officers Defendants'] arrest of Plaintiff on the basis of a valid immigration warrant. Even the new equal protection claim would be subject to the same qualified immunity analysis." (ECF No. 37-3 at 3.)

In opposition, Plaintiff asserts she "add[ed] ten (10) additional allegations describing the circumstances of the arrest and the document relied on by the [Officer Defendants] to show why the conduct of the [Officer Defendants] was <u>not</u> objectively reasonable under the circumstances." (ECF No. 41 at 2.) The additional allegations include, *inter alia*, that: (1) the Officer Defendants arrested Plaintiff without probable cause; (2) the Officer Defendants "did not have a judicial

warrant, signed by a neutral magistrate pursuant to an affiant's statement of probable cause, which allowed them to arrest the Plaintiff"; (3) the Officer Defendants "wrongfully relied on a federal agency document allowing for deportation of individuals with removal orders[,]" which was "not titled 'Warrant for Arrest'" and was "addressed '[t]o any immigration officer of the United States Department of Homeland Security'"; (4) "[l]ocal police officers cannot execute these federal documents nor can states pass laws allowing police officers to do so"; and (5) the City had "not entered into a written agreement with federal immigration authorities . . . to authorize City employees to enforce civil immigration law." (ECF No. 36 at 9–11.)

As to the immigration warrant in question, Plaintiff asserts

> The federal document relied on by the [Officer Defendants] calls for the deportation not arrest of an individual. Nowhere on this document does the word appear. The document is addressed to federal immigration officers, not local law enforcement; the document is not signed by a neutral magistrate as is required in a judicial arrest warrant; and the document commands federal immigration officers to remove from the United States the subject individual, a function local law enforcement cannot perform.

(ECF No. 41 at 2.) Plaintiff's depiction of the immigration warrant, however, fails to mention several important pieces of information.[2] For example, while Plaintiff is correct in her assertion that the warrant does not contain the word arrest, the document is titled "Warrant of Removal/Deportation." (ECF No. 9-4 at 3.) Moreover, although not signed by a neutral magistrate judge, the warrant indicates Plaintiff "is subject to removal/deportation from the United States, based upon a final order by . . . an immigration judge in exclusion, deportation, or removal proceedings." (*Id.*) Finally, as Plaintiff points out, the warrant "command[ed the recipient] to take

---

[2] The Court considers the immigration warrant, attached as an exhibit to the City, Officer Defendants, and City of Newark Police Department's Motion to Dismiss Plaintiff's Original Complaint (ECF No. 9-4) because the warrant is integral to and relied upon in Plaintiff's Amended Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

7

into custody and remove from the United States the above-named alien, pursuant to law, at the expense of" DHS. (*Id.*) This command is immediately followed by the signature of John Tsoukaris, a DHS immigration officer. (*Id.*)

As alleged, the Court again finds the conduct of the Officer Defendants was objectively reasonable. Prior to Plaintiff's arrest, the Officer Defendants received from DHS a document titled "Warrant of Removal/Deportation" that, while addressed "[t]o any immigration officer of the United States[,]" commanded Plaintiff be taken into custody and removed from the United States. (ECF No. 9-4 at 3.) As the Court stated in its August 31, 2020 Opinion, "[w]hether the immigration warrant actually created probable cause for the entry and arrest, . . . the Officer Defendants could have reasonably believed that it did." (ECF No. 28 at 16.) Furthermore, the factual allegations added to Plaintiff's Amended Complaint, including a description of the immigration warrant, details regarding federal preemption of immigration law, and conclusions regarding the Officer Defendants' reliance on the immigration warrant, fail to provide the Court with adequate factual support regarding the unreasonableness of the Officer Defendants' conduct. *See Connor v. Powell*, 744 A.2d 1158, 1164 (N.J. 2000) ("If officers of reasonable competence could disagree on the issue of probable cause, the doctrine of qualified immunity should be applied.").

Finally, in its August 31, 2020 Opinion, the Court stated "Plaintiff [did] not cite to a single case wherein police officers acting in a similar fashion have been found to have violated constitutional rights sufficient to place them outside the ambit of qualified immunity." (ECF No. 28 at 16 n.10.) Plaintiff argues she did cite to a case, *Arizona v. United States*, 567 U.S. 387 (2012). (ECF No. 41 at 3.) Plaintiff again cites to *Arizona* in her Amended Complaint for the proposition that: (1) "[f]ederal warrants of removal can only be executed by federal officers who received training in enforcement of immigration law"; (2) "[l]ocal police officers cannot execute these federal documents nor can states pass laws allowing local police officers to do so"; and

8

(3) "[m]ere unauthorized presence in the United States alone is not a criminal matter, and as such, does not give rise to an inference of criminal activity." (ECF No. 36 at 7–8, 10.) *Arizona*, however, addressed "whether federal law preempt[ed] and render[ed] invalid four separate provisions of" an Arizona state law which (1) made "failure to comply with federal alien-registration requirements a state misdemeanor"; (2) made an unauthorized alien's solicitation of work in Arizona a misdemeanor; and (3) gave "specific arrest authority and investigative duties with respect to certain aliens to state and local law enforcement officers." *Arizona*, 567 U.S. at 393–94. While the Supreme Court ultimately held the arrest authority provision was preempted by federal law because it "violate[d] the principle that the removal process is entrusted to the discretion of the Federal Government[,]" *id.* at 409–10, *Arizona* did not deal with qualified immunity or the specific actions of any officer. *See generally id.* Moreover, the limited caselaw within this District and the Third Circuit Court of Appeals that refers to *Arizona* does not demonstrate that the actions of the Officer Defendants violated a clearly established right. Because "existing precedent must have placed the statutory or constitutional question *beyond debate*" for qualified immunity to apply, *White*, 137 S. Ct. at 551 (emphasis added), and because of "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality[,]'" *id.* at 552 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)), the Court again finds the Officer Defendants' conduct to be within the scope of qualified immunity. Accordingly, the Newark Defendants' Motion to Dismiss, as to Plaintiff's Section 1983 claims, is **GRANTED**, and Counts One and Two of the Amended Complaint are **DISMISSED WITH PREJUDICE**.

    2.    **Count Three:** *Monell*

"[A] local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under [Section] 1983." *Monell v.*

*Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978). "Under *Monell*, a plaintiff shows that a policy existed when a decisionmaker possess[ing] final authority to establish municipal policy . . . issues an official proclamation, policy, or edict." *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007) (internal quotation marks and citations omitted). "A plaintiff may establish a custom, on the other hand, by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* at 155–56 (internal quotation marks and citation omitted). Count Three of Plaintiff's Amended Complaint asserts the City and Chief Henry "tolerated and condoned" a custom under which "civil rights violations frequently occurred." (ECF No. 36 at 13.)

In its August 31, 2020 Opinion, the Court held Plaintiff's *Monell* claim "failed to adequately plead the existence of an official policy or custom, implemented by the City . . . that caused her alleged injuries." (ECF No. 28 at 19; *see also id.* at 20 ("The Court finds Plaintiff's threadbare conclusion that Defendants acted pursuant to an official policy or custom insufficient to state a claim.").) The Court found Plaintiff (1) "fail[ed] to identify, with the requisite specificity, the policy or custom she" alleged existed; (2) "fail[ed] to identify any decisionmaker with the requisite authority to establish such an unconstitutional policy or custom"; and (3) "fail[ed] to adequately allege that [the City's] failure to train amounted to 'deliberate indifference' to the constitutional rights of Plaintiff or others." (*Id.* at 20, 22.) Here, absent one additional paragraph and the inclusion of Chief Henry, Count Three of Plaintiff's Amended Complaint is identical to Count Three of her Complaint. (*Compare* ECF No. 1-2 at 12–13, *with* ECF No. 36 at 12–14.)[3] The additional paragraph, however, merely states, "[i]n addition, [D]efendant, City of Newark and

---

[3] In the "Parties" section of her Amended Complaint, Plaintiff also alleges Chief Henry "was the primary official responsible for developing and maintaining police practices and customs, for implementing, monitoring and supervising training of police officers and the handling of the investigation and charging relevant to this matter." (ECF No. 36 at 3.)

10

Defendant Chief of Police Darnell Henry tolerated and condoned violations of civil rights of citizens by police officers by failing to properly investigate and discipline its officers with respect to citizen complaints thereby creating an atmosphere where civil rights violations frequently occurred." (ECF No. 36 at 13.)

"When a [p]laintiff brings a complaint under *Monell* against a municipality, the offending custom, policy, or practice must be [pled] specifically in the complaint." *Lapella v. City of Atlantic City*, Civ. A. No. 10-2454, 2012 WL 2952411, at *5 (D.N.J. July 18, 2012) (citing *McTernan v. City of York*, 564 F.3d 636 (3d Cir. 2009)). However, allegations such as Plaintiff's "of a 'policy of ignoring . . . right[s]' are insufficient to allege a *Monell* claim." *Id.* at *6 (quoting *McTernan*, 564 F.3d at 657). Moreover, "[w]hile alleging a custom requires a showing of indifference to a known illegal activity, it is insufficient to allege a custom of indifference. Indifference is not a custom, and merely alleging a 'custom of indifference' is no less conclusory than alleging a 'custom' itself." *Id.* at *8. Here, Plaintiff's *Monell* claim essentially alleges the City and Chief Henry were indifferent to "violations of civil rights of citizens by police officers." (ECF No. 36 at 13.) Without further factual support, the Court finds Plaintiff has failed to plausibly allege a *Monell* claim. Accordingly, the Newark Defendants' Motion to Dismiss, as to Plaintiff's *Monell* claim, is **GRANTED**, and Count Three is **DISMISSED WITH PREJUDICE**.[4]

---

[4] Plaintiff also asserts the City and Chief Henry "failed to actually train their officers and employees to handle the frequent, usual, and reoccurring situations where an individual is suspected of nothing more than a civil immigration violation." (ECF No. 36 at 13.) Aside from the inclusion of Chief Henry, Plaintiff's failure to train claim in her Amended Complaint is identical to her claim in the original Complaint. (*Compare* ECF No. 1-2 at 12–13, *with* ECF No. 36 at 13.) In its August 31, 2020 Opinion, the Court dismissed Plaintiff's failure to train claim under *Monell* for "fail[ing] to adequately allege that [the City's] failure to train amount to 'deliberate indifference' to the constitutional rights of Plaintiff or others." (ECF No. 28 at 22.) Having determined Plaintiff's claim is essentially identical to her previously-dismissed claim, the Court again finds Plaintiff has failed to state a claim for failure to train.

### 3. Count Four: NJCRA and New Jersey Constitution

Count Four of Plaintiff's Amended Complaint alleges violations of the NJCRA and New Jersey Constitution against "All Government Defendants" for causing Plaintiff to

> suffer a false arrest by their wrongful conduct in detaining her against her will, in the absence of exigent circumstances; without reasonable suspicion of criminal activity; unreasonably arresting her against her will without probable cause of criminal activity and without authority; detaining her, handcuffed at the police station; and transferring her to ICE custody which continued to detain her for several hours thereafter . . . .

(ECF No. 36 at 14.) Aside from asserting her claim against "All Government Defendants," Count Four of Plaintiff's Amended Complaint is identical to the NJCRA and New Jersey Constitution claim of the original Complaint. (*Compare id.* at 14–15, *with* ECF No. 1-2 at 13–14.)

In its August 31, 2020 Opinion, the Court held that, because "Plaintiff ha[d] failed to adequately plead the existence of a municipal custom or policy that resulted in a constitutional deprivation[,]" her "NJCRA claim, as to the City . . . similarly fails." (ECF No. 28 at 23.) Moreover, the Court noted "[t]he doctrine of qualified immunity 'extends to suits brought under [Section 1983] and under New Jersey's analogue, the [NJCRA]." (*Id.* (quoting *Morillo*, 117 A.3d at 1208).) Because the Court determined the Officer Defendants were entitled to qualified immunity, it held Plaintiff's NJCRA and New Jersey constitutional claims against the Officer Defendants had failed. (*Id.*)

Here, Plaintiff has similarly failed to plausibly allege a municipal liability claim against the City and Chief Henry, and the Officer Defendants are entitled to qualified immunity. Accordingly, the Newark Defendants' Motion to Dismiss, as to Plaintiff's NJCRA and New Jersey Constitution claims, is **GRANTED**, and Count Four of Plaintiff's Amended Complaint is **DISMISSED WITH PREJUDICE**.

#### 4. Count Five: NJLAD

In its August 31, 2020 Opinion, the Court dismissed Plaintiff's NJLAD claim without prejudice for failure to state a claim. (ECF No. 28 at 27.) The Court held Plaintiff's "arrest, whether lawful or unlawful, was premised on her status as an undocumented immigrant; it was not based on her national origin." (*Id.* at 26–27; *see also id.* at 23–24 ("The NJLAD broadly prohibits discrimination on the basis of a litany of enumerated factors including . . . national origin . . . ." (citing N.J. Stat. Ann. §§ 10:5-1, *et seq.*)).) Moreover, the Court found "Plaintiff's allegations that the Officer Defendants taunted her with pro-Trump comments on the drive to the precinct [were], without more, too conclusory to sustain a claim for discrimination." (*Id.* at 27.) Finally, the Court held Plaintiff "failed to allege facts that indicate others outside of her protected class received different treatment." (*Id.* at 27.)

Count Five of Plaintiff's Amended Complaint fails to cure the deficiencies set forth in the Court's August 31, 2020 Opinion. Plaintiff again fails to provide sufficient facts to demonstrate she was arrested because of her national origin. (*See generally* ECF No. 36.) Rather, Plaintiff merely alleges, in a conclusory fashion, she was arrested "based on her immigration status and her status as a Latina." (*Id.* at 12; *see also id.* at 15 ("By arresting the Plaintiff without any basis for probable cause and due solely to her immigration status, race and national origin, the Defendants violated the [NJLAD].").) Without more, however, the Court cannot find Plaintiff has plausibly alleged a violation of the NJLAD. Moreover, Plaintiff again fails to allege that others outside of her race or national origin received different treatment from the Officer Defendants. (*See generally id.*) Accordingly, the Newark Defendants' Motion to Dismiss, as to Plaintiff's NJLAD claim, is **GRANTED**, and Count Five is **DISMISSED WITH PREJUDICE**.

### 5. Count Seven: Punitive Damages

Count Seven of Plaintiff's Amended Complaint alleges the Officer Defendants and Chief Henry's conduct "in illegally and unjustifiably charging and arresting Plaintiff and then prosecuting her amounts to malicious, willful and wanton conduct sufficient to justify an award of punitive damages pursuant to" the Punitive Damages Act, N.J. Stat. Ann. §§ 2A:15-5.9, *et seq*. (*Id.* at 18.) However, because no substantive claims remain against the Officer Defendants and Chief Henry, Plaintiff's claim necessarily fails. Accordingly, the Newark Defendants' Motion to Dismiss, as to Plaintiff's punitive damages claim, is **GRANTED**, and Count Seven, as to the Officer Defendants and Chief Henry, is **DISMISSED WITH PREJUDICE**.

### B. BluLine Defendants

#### 1. Count Six: Malicious Use of Process and Malicious Prosecution

Count Six of Plaintiff's Amended Complaint asserts malicious prosecution and malicious use of process against the BluLine Defendants. (ECF No. 36 at 16–17.) Under New Jersey state law, a plaintiff seeking to prevail on a malicious prosecution claim "must prove '(1) that [a] criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 636–37 (D.N.J. 2011) (quoting *Epperson v. Wal-Mart Stores, Inc.*, 862 A.2d 1156, 1160 (N.J. Super. Ct. App. Div. 2004)). Malicious use of process, on the other hand, "is essentially the analog used when the offending action in question is civil rather than criminal." *LoBiondo v. Schwartz*, 970 A.2d 1007, 1022 (N.J. 2009). Malicious use of process, therefore, requires a plaintiff to establish (1) "the defendant instituted a civil action against [her];" (2) "the action was motivated by malice;" (3) "there was an absence of probable cause to prosecute;" (4) "the action was terminated in the plaintiff's favor;" and (5) "the plaintiff suffered a special grievance, i.e., an interference with

liberty or property." *Ragner Tech., Corp. v. Telebrands Corp.*, Civ. A. No. 15-8185, 2018 WL 2422012, at *2 (D.N.J. May 29, 2018) (citations omitted). Although somewhat of "an elusive concept[,]" "a special grievance 'consists of interference with one's liberty or property.'" *LoBiondo v. Schwartz*, 733 A.2d 516, 534 (N.J. Super. Ct. App. Div. 1999) (quoting *Penwag Prop. Co. v. Landau*, 388 A.2d 1265, 1266 (N.J. 1978)); *see also id.* ("[W]e do not read 'interference with one's liberty' as embracing only physical freedom of movement and hence as limited to restraint on that freedom. Rather, we interpret 'liberty' as including the entire bundle of freedoms afforded by the Constitution . . . .").

The BluLine Defendants set forth several arguments in favor of dismissal of Count Six. First, they note it is undisputed that Plaintiff had an open order of deportation. (ECF No. 42-2 at 12.) The BluLine Defendants, therefore, argue "[i]f someone is aware that a deportation order or arrest warrant is outstanding, reporting it to law enforcement is not malicious." (*Id.*) Second, the BluLine Defendants assert "it is unclear what action Plaintiff" is referring to in Count Six and, therefore, the fourth element of both malicious prosecution and malicious use of process—that the action was terminated in Plaintiff's favor—cannot be established. (*Id.* at 12–13.) Third, the BluLine Defendants contend "there is no allegation of fact that [they] committed further acts demonstrating intent to use the [deportation] order as a means to coerce[,]" and, therefore, their actions were "no different than if there was any call from any other civilian reporting a crime or suspicion of one." (*Id.* at 16.)

The Court rejects the BluLine Defendants' arguments as they relate to Plaintiff's malicious prosecution claim because Plaintiff has plausibly alleged a claim. Plaintiff alleges Saldida called Lieutenant Rodrigues and informed him Plaintiff had an open immigration warrant. (ECF No. 36 at 16.) Following the call, Lieutenant Rodrigues contacted ICE "to confirm the open immigration order of deportation." (*Id.*) According to Plaintiff, the Officer Defendants then forcibly entered

15

Plaintiff's home, placed her under arrest, and filed an Incident Report. (*Id.* at 4–5.) By itself, Saldida's conduct does not meet the first element of a malicious prosecution claim, as "an allegation that a defendant merely provided information to [the police] is insufficient to plead the 'initiated criminal proceedings' element." *Falat v. Cnty. of Hunterdon*, Civ. A. No. 12-6804, 2014 WL 6611493, at *16 (D.N.J. Nov. 21, 2014) (citing *Campbell v. Yellow Cab. Co.*, 137 F.2d 918, 921 (3d Cir. 1943)); *see also Campbell*, 137 F.2d at 921 ("If under such circumstances the person making the identification believes it to be correct he is not deemed the instigator of criminal proceedings subsequently begun by the police officers in the exercise of their discretion even though his identification may have been without probable cause and with malice."). However, Plaintiff also alleges Saldida "knew his power and influence, as a former Newark Chief of Police, would cause the Newark Police Officers to act immediately and arrest the [P]laintiff without legal justification." (ECF No. 36 at 16.) Such conduct was contemplated by the Restatement of Torts as a means to charge private individuals with malicious prosecution. Comment g of the Restatement of Torts provides:

> In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated expressed by direction, request, or pressure of any kind was the determining factor in the official's decision to commence the prosecution . . . .

Restatement (First) of Torts § 653 cmt. g (1938); *see also id.* (providing an example of initiating proceedings where "a political boss to whom [a prosecutor] owes his election . . . demands" the prosecution of another individual for "an offense for which a public prosecutor would not ordinarily initiate proceedings"). Because Plaintiff has plausibly alleged (1) Saldida's call caused the Officer Defendants to pursue an action they likely would not have otherwise pursued, and (2) that pursuit was due to Saldida's "power and influence," the Court finds Plaintiff has adequately pled element one of a malicious prosecution claim.

Elements two through four of malicious prosecution have also been plausibly alleged. First, Plaintiff alleges Saldida maliciously made the call to Lieutenant Rodrigues "to prevent the Plaintiff from testifying in a criminal proceeding arising from domestic violence . . . against her estranged husband, Frank Aiello." (ECF No. 36 at 16.) According to Plaintiff, if Saldida "merely wanted to bring the Plaintiff's immigration status to the attention of the Department of Homeland Security, [he] could have called the Department instead of Newark Police." (*Id.* at 17.) Second, Plaintiff asserts Saldida lacked probable cause when he called Lieutenant Rodrigues because he "did not report [P]laintiff having committed any criminal offenses but rather a civil immigration offense." (*Id.* at 16.) Third, according to Plaintiff, she "reported the unlawful arrest to the Newark Police Department Office of Professional Standards[,]" which initiated an investigation and found the Officer Defendants "violated the Newark Police Department's rules and regulations." (*Id.* at 6.) Moreover, Plaintiff maintains that, following her arrest, she was never "charged for any violation of criminal law." (*Id.* at 9.) The Court, therefore, concludes Plaintiff has plausibly alleged (1) the BluLine Defendants were motivated by malice when reporting Plaintiff's immigration status, (2) the BluLine Defendants did not have probable cause of any criminal activity when reporting Plaintiff to Lieutenant Rodrigues, and (3) Plaintiff's criminal arrest terminated in her favor. Accordingly, the BluLine Defendants' Motion to Dismiss the malicious prosecution claim of Count Six is **DENIED**.

Plaintiff, however, does not allege any facts related to the termination of her civil immigration proceedings. (*See generally* ECF No. 36.) Although Plaintiff argues in her opposition "[t]he civil immigration matter terminated favorably for [her] because she was granted a visa under the Violence Against Women[] Act based on the abuse she suffered at the hands of her estranged husband[,]" (ECF No. 44 at 3), Plaintiff may not amend her Amended Complaint through her opposition briefing. *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

17

Moreover, the Court cannot discern how the BluLine Defendants lacked probable cause in reporting Plaintiff's deficient immigration status when Plaintiff explicitly alleges Lieutenant Rodrigues contacted ICE, confirmed Saldida's assertions, and received a copy of the open immigration order of deportation. (ECF No. 36 at 6.) The Court, therefore, finds Plaintiff has failed to plausibly allege facts to set forth a claim for malicious use of process, the civil analog of a malicious prosecution claim. Accordingly, the BluLine Defendants' Motion to Dismiss the malicious use of process claim of Count Six is **GRANTED**.

The BluLine Defendants' Motion to Dismiss, as it relates to Plaintiff's malicious use of process and malicious prosecution claim, is **GRANTED IN PART and DENIED IN PART**. Count Six, as it sets forth a malicious use of process claim, is **DISMISSED WITH PREJUDICE**.

### 2. Count Seven: Punitive Damages

Count Seven alleges the BluLine Defendants' actions "amount[] to malicious, willful and wanton conduct sufficient to justify an award of punitive damages pursuant to" the Punitive Damages Act. (ECF No. 36 at 18 (further alleging the BluLine Defendants "were fully aware that their conduct would result in serious harm to the Plaintiff").)

The BluLine Defendants assert "[c]ircumstances of aggravation and outrage, beyond the simple commission of a tort, are required for an award of punitive damages." (ECF No. 42-2 at 18–19; *see also id.* at 19 ("[T]he standard can only be established if the defendant knew or had reason to know of circumstances which would bring home to the ordinary reasonable person the highly dangerous character of his or her conduct.").) The BluLine Defendants, accordingly, argue "Plaintiff has alleged no evidence of actions by the BluLine Defendants" to reach this standard. (*Id.*)[5]

---

[5] Plaintiff does not set forth an argument in opposition to the BluLine Defendants' punitive damages argument. (*See generally* ECF No. 44.)

"To establish a claim for punitive damages under the Punitive Damages Act," Plaintiff "must prove, by clear and convincing evidence, that . . . the [BluLine Defendants'] acts or omissions . . . were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." *Tafaro v. Six Flags Great Adventure, LLC*, Civ. A. No. 17-5607, 2018 WL 1535289, at *8 (D.N.J. Mar. 29, 2018) (citing N.J. Stat. Ann. § 2A:15-5.12) (internal quotation marks omitted). Furthermore, the Punitive Damages Act includes a non-exhaustive list of factors a court should consider when determining if punitive damages are appropriate, including "[t]he likelihood, at the relevant time, that serious harm would arise from the defendant's conduct." N.J. Stat. Ann. § 2A:15-5.12(b).

Here, Plaintiff alleges Saldida informed Lieutenant Rodrigues of Plaintiff's open immigration warrant in an effort to prevent Plaintiff from testifying in a criminal proceeding against her estranged husband. (ECF No. 36 at 5–6.) Moreover, Plaintiff asserts Saldida "knew his power and influence, as a former Newark Chief of Police, would cause the [Officer Defendants] to act immediately and arrest" her. (*Id.* at 6.) Importantly, Plaintiff maintains "[f]ederal warrants of removal can only be executed by federal officers who received training in enforcement of immigration law." (*Id.* at 8; *see also id.* at 7 ("Local law enforcement officers of a State or a State subdivision are not permitted unilaterally to enforce federal immigration laws.").) The Court, therefore, finds that Plaintiff has plausibly alleged the BluLine Defendants, in notifying local law enforcement—untrained in handling immigration matters—with the expectation that the officers would "act immediately and arrest" Plaintiff, acted with a willful disregard towards foreseeable harm against Plaintiff. Accordingly, the BluLine Defendants' Motion to Dismiss, as to Plaintiff's punitive damages claim, is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above the Newark Defendants' Motion to Dismiss is **GRANTED** and the BluLine Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part**. An appropriate order follows.

Date: May 28, 2021

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**